# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

NANA AMARTEY BAIDOOBONSO-IAM,

    *Defendant.*

Case No. 19-10127-EFM-2

## MEMORANDUM AND ORDER

    Defendant Nana Amartey Baidoobonso-Iam was charged in a Superseding Indictment with one count of wire fraud, in violation of 18 U.S.C. § 1341, and one count of making a false declaration under oath in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(3). The case proceeded to trial before a jury from March 14 to March 17, 2022, with the jury returning a verdict of guilty on both counts. Defendant now moves for judgment of acquittal, or alternatively for a new trial, pursuant to Fed. R. Civ. P. 29(a) and 33(a). Defendant contends the evidence is insufficient to support the verdict, that the verdict is contrary to the weight of the evidence, that the court erred by excluding testimony of a defense expert witness, and that the interests of justice warrant a new trial. For the reasons stated herein, Defendant's motion for judgment of acquittal or for new trial is denied.

### I.     Factual and Procedural Background

The evidence at trial included the following. In 2005, Gladys Gonzalez and her husband purchased a residence in California (the "Whittier Property") for $646,400 by taking out a loan and signing a Note and Deed of Trust as security for the loan. The Deed of Trust granted a right of non-judicial foreclosure to a trustee, for the benefit of the lender, in the event of a default on the loan. Gonzalez was later divorced and was unable to make the loan payments, going into default by 2008. In 2014, the Wolf Law Firm in California, at the direction of the holder of the Deed of Trust or its agent, was directed to foreclose on the property. After years of delay, attorney Alan Wolf of the Wolf Law Firm ultimately conducted a non-judicial foreclosure sale of the Whittier Property on or about January 4, 2018. By that time, no payments had been made on the loan for about nine years.

Prior to the foreclosure sale, in June of 2017, Defendant and Gonzalez had filed suit against The Wolf Law Firm and others, including Alan Wolf, in the United States District Court for the Central District of California, demanding that the defendants produce proof that they held the note on the Whittier Property and show that they had standing to foreclose. On September 18, 2017, the California federal district court granted the defendants' motion to dismiss that complaint for failure to state a claim, and on November 14, 2017, the court dismissed the action with prejudice after Defendant and Gonzalez failed to cure deficiencies in their complaint.

A few days before the foreclosure sale, Defendant filled out a form from the United States Bankruptcy Court for the District of Kansas entitled "Involuntary Petition Against an Individual" ("the Involuntary Petition"), which is a form "to begin a bankruptcy case against an individual you

allege to be a debtor subject to an involuntary case."[1]  Defendant checked a box indicating it was a Chapter 7 filing and identified Alan Wolf as the "Debtor."  In a section entitled "Allegations" he checked a box next to the statement, "The debtor is generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount."  Under a heading for "Each petitioner's claim," he listed Gonzales and himself, and for the "Amount of the clam above the value of any lien" he listed "$1,260,000.00" for Gonzales and "$630,000.00" for himself.  The pre-printed "Request for Relief" on the form asked "that an order of relief be entered against the debtor" and the form represented that the petitioners "declare under penalty of perjury that the information provided in this petition is true and correct."[2]  The form bore the signatures of Gonzalez and Defendant.  On January 4, 2018, the day of the foreclosure sale, Defendant used United States Express Mail to send the form from Downey, California, to the United States Bankruptcy Court for the District of Kansas in Wichita, where it was received and filed on or about January 5, 2018.  Evidence was presented that when an involuntary petition such as this is filed, the named debtor has a chance to respond.  If the person does not respond, a judge appoints a trustee to gather assets of the debtor and to sell them to satisfy the debt.  In this instance, Wolf responded to the petition and a judge eventually granted Wolf's motion to dismiss the bankruptcy action.[3]

Gladys Gonzalez testified that she met Defendant in 2016 through a friend who told her Defendant could help with her mortgage situation.  Gonzalez, who speaks English as a second

---

[1] Govt. Exhibit 1.

[2] *See id.* at 1-2.

[3] *See* Govt. Exhibit 7.

language, said she didn't understand the documents Defendant gave her but she trusted him and signed various documents as he directed. She signed a September 2016 Demand For Beneficiary Statement prepared by Defendant as well as the Involuntary Petition against Wolf, although she testified she did not read the documents. She testified Wolf never owed her any money, she did not have any claim against Wolf, and she never told Defendant Wolf owed her $1,260,000 or that he wasn't paying his debts. She said Defendant did not tell her he was going to file a bankruptcy petition against Wolf to collect $1.2 million on her behalf and did not explain what the form was, except to say he was filing papers against the mortgage company, and he put little yellow stickers on the documents where Gonzalez was supposed to sign. Gonzalez testified Defendant had asked her at one point if she wanted to file for bankruptcy, but she told him no because she did not want to ruin her credit.

The Government introduced evidence of a "Short Form Deed of Trust" that was recorded on the Whittier Property in November 2017.[4] The Short Form Deed recited that it was executed on August 1, 2012 and purported to transfer an interest in the Whittier Property from Gonzalez to Defendant and to "Homeowners Equity Partnership Trust," an entity claimed by Defendant. It stated it was given to secure a debt evidenced by a promissory note of the same date, in the amount of $250,000, executed by Gonzalez in favor of Defendant. Gonzalez testified the signature on the Short Form Deed was hers but that she never agreed to give Defendant an interest in the property, never received $250,000 from him or gave him a promissory note for $250,000, and did not even meet Defendant until 2016, years after the 2012 date recited in the Short Form Deed.

---

[4] *See* Govt. Exhibit 16.

Defendant testified he met Gonzalez in 2012 and that she executed the Short Form Deed in August of 2012 to give him an interest in the Whittier Property as payment for his services. Defendant conceded that, aside from the Short Form Deed, he did not have any proof that he met Gonzalez prior to 2016. The Short Form Deed bears a notary signature and seal in support of Gonzalez's signature that indicates the person signing was "Gladys D. Pilar," although the printed name below Gonzalez's signature stated "Gladys Gonzalez." Additionally, the word "VOID" appears next to the notary's signature on the first page, although a separate certification by the notary appears on a subsequent page. Defendant testified Gonzalez gave a $250,000 promissory note to him as recited in the Short Form Deed of Trust, although he said the promissory note was now lost because it had been among his records that were inadvertently thrown out. Defendant also conceded that, notwithstanding the 2012 date on the Short Form Deed, he only began getting involved with Gonzalez's mortgage situation in September of 2016.

Defendant testified he believed the foreclosure on the Whittier Property was unlawful because of defects in the way the Whittier Property Deed of Trust was pooled with other mortgages and made part of a securitized trust, and how it was transferred from the original holder. He said he had previously made a demand on Wolf to prove his standing to foreclose and that Wolf failed to respond. Defendant testified he had notified Wolf that he (Wolf) would be liable for three times the amount of the loan, or $2.1 million, if he failed to respond to Defendant's demand, and that Wolf's failure to respond made him liable because, according to Defendant, silence amounts to acquiescence. The jury saw evidence of attachments to Defendant's complaint against Wolf from the California federal case, including the September 2016 Demand for Beneficiary Statement

prepared by Defendant (in Gonzalez's name[5]) and which Defendant apparently sent to Wolf and others.[6] The Demand insisted that the respondents produce various documents and answer a number of questions. It included a section entitled "Terms and Conditions," which stated that the respondents (including Wolf) "agree[] to compensate" Gonzalez $100,000 times three, or $300,000, for each of various acts, including for breach of fiduciary duty, trespass, misrepresentation, extortion, and conspiracy, totaling $2,100,000.[7] It said they had twenty days to deliver the $2.1 million, and beyond that "an additional Fee in the amount [of] Ten Thousand Dollars … shall accrue[] daily."[8] The jury saw that Defendant prepared other documents as well, including a January 2017 "Notice of Default and Opportunity to Cure," which stated that Wolf and the other respondents "are now at fault," that the "Lien Claimant" [Gonzalez] intends "to file a Commercial lien" against them, and that failure to cure the fault within three days "will constitute, as an operation of law, the FINAL admission of the obligation … through 'Tacit Procuration' … and the whole matter shall be deemed 'Res Judicata and Stare Decisis.'"[9]

The Government presented evidence that the September 2016 Demand for Beneficiary Statement prepared and sent by Defendant was untimely under California law, such that it did not legally require a response. Nevertheless, the Wolf Law Firm forwarded the Demand to the loan servicer and the loan servicer sent a response to Gonzalez, the person named in the Demand.

---

[5] The heading on the document stated, "Gladys D. Gonzalez Personal Representative," and "Gladys D. Gonzalez, Estate… Office of the Executor." Def. Exhibit 401 at 9.

[6] *See* Def. Exhibit 401 at 9.

[7] *Id.* at 13.

[8] *Id.*

[9] *Id.* at 19.

Defendant acknowledged that his suit against Wolf in California was dismissed but said he still believed the foreclosure was wrongful. Defendant testified he filed the Involuntary Petition against Wolf in Kansas because he intended to litigate a claim against Wolf for damages through the bankruptcy court. Defendant testified he filed the petition in Kansas because he intended to move there from California. Defendant acknowledged he had previously filed eleven personal bankruptcy petitions in California and elsewhere in attempts to save properties from foreclosure, and that those proceedings had all been dismissed for reasons including Defendant's failure to prosecute and failure to provide required documents. He acknowledged that he had filed numerous other civil proceedings and he had been interviewed by the Federal Bureau of Investigation in 2019 about various unsuccessful lawsuits he had filed. There was also evidence that Defendant had previously been found by a California court to be a vexatious litigant.

The jury saw evidence of Defendant's response to Wolf's motion to dismiss the involuntary bankruptcy proceeding. The response included assertions that Wolf had "committed fraud by illegally foreclosing on their property," that Wolf had failed to response to Defendant's demand to prove standing, that Wolf's failure to respond result in a default in the amount of the demand, and "that is why Plaintiffs/Creditors are seeking relief through Bankruptcy Court for payment."[10]

The mail fraud charge in Count One of the Superseding Indictment alleges, in essence, that Defendant devised a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses; that to execute the scheme he knowingly caused to be delivered by mail the Involuntary Petition Against an Individual to the District of Kansas Bankruptcy Court on January 5, 2018; and that in the petition he falsely alleged that Wolf was not "generally paying"

---

[10] Def. Exhibit 422 at 3.

his debts and that Wolf owed Gladys Gonzalez the sum of $1,260,000 and Defendant the sum of $630,000.  The false declaration charge in Count Two alleges, in essence, that on January 5, 2018, Defendant did knowingly and fraudulently make a material false declaration and statement under penalty of perjury; that he did so in relation to a case under Title 11 of the United States Code by stating and declaring in the Involuntary Petition that Wolf was not generally paying his debts and that Wolf owed Gladys Gonzalez the sum of $1,260,000 and owed Defendant the sum of $630,000, when Defendant knew the allegations against Wolf were false and fraudulent.

## II.     Legal Standard

Under Rule 29 of the Federal Rules of Criminal Procedure, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[11] When reviewing the sufficiency of evidence to sustain a guilty verdict, the Court asks whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[12]  Where, as here, Defendant elected to put on evidence after the Court denied a defense motion for judgment of acquittal at the close of the Government's case, the court looks to all of the evidence – including evidence from Defendant's case and from the Government's rebuttal – in

---

[11] Fed. R. Crim. P. 29(a).

[12] *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

determining the sufficiency of the evidence.[13] The Court may consider all direct and circumstantial evidence admitted at trial as well as all "reasonable inferences to be drawn therefrom."[14] Substantial evidence must support the conviction, but "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."[15]

Under Rule 33(a) of the Federal Rules of Criminal Procedure, the Court may grant a defendant a new trial "if the interest of justice so requires."[16] Courts have concluded that any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial.[17] The defendant has the burden of proving the necessity of a new trial.[18]

### III.   Analysis

**A.  Count One – Mail Fraud 18 U.S.C. § 1341.**

Defendant first argues the Government failed to introduce evidence to support three essential elements of mail fraud: that Defendant devised a scheme to defraud; that Defendant acted with specific intent to defraud; and that the scheme employed false or fraudulent pretenses or representations that were material.  He concedes that his representations in the Involuntary Petition "were incorrect statements," but contends they were not intended or reasonably calculated to

---

[13] *United States v. Leyva*, 442 F. App'x 376, 378 (10th Cir. 2011) (citing *United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004)).

[14] *United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006) (quoting *United States v. Scull*, 321 F.3d 1270, 1282 (10th Cir. 2003)).

[15] *United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005) (quoting *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994)).

[16] Fed. R. Crim. P. 33(a).

[17] *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000).

[18] *Id.*

deceive either Wolf or the bankruptcy court. Defendant maintains he intended to use the bankruptcy court to litigate a claim for wrongful foreclosure and that he did not intend to deceive or cheat anyone.

The court rejects these arguments based on the totality of evidence presented at trial and the reasonable inferences from that evidence. "The Tenth Circuit has repeatedly noted that, because fraudulent intent is difficult to prove with direct evidence, it may be inferred from circumstantial evidence."[19] Defendant essentially argues that he filed the Involuntary Petition because of a good faith misunderstanding of the law, but a jury viewing the evidence in the light most favorable to the Government could see it otherwise. For example, Defendant's claim against Wolf for wrongful foreclosure was itself premised on a purported 2012 Short Form Deed in which Gonzalez allegedly conveyed an interest in the Whittier Property to Defendant. But Gonzalez testified she did not meet Defendant until 2016, that she never gave him an interest in the property, and that she never gave him a $250,000 promissory note as recited in the deed. If the jury believed her testimony, it could reasonably conclude that the 2012 Short Form Deed under which Defendant claimed an interest in the Whittier Property was itself fraudulent. That fact alone could go a long way toward convincing a jury that Defendant acted with fraudulent intent in making the representations contained in the Involuntary Petition against Wolf. If Defendant knew he had no legitimate interest in the Whittier Property, a jury could find he had no bona fide dispute with Wolf over foreclosure of the property or a legitimate claim against him for $630,000.

The notion that Defendant's filing of the Involuntary Petition was merely a good faith attempt to litigate a wrongful foreclosure claim was undermined by other circumstantial evidence

---

[19] *United States v. Kalu*, 791 F.3d 1194, 1205 (10th Cir. 2015).

as well.  Evidence showed Defendant had previously filed numerous personal bankruptcies that were dismissed, suggesting he had previously abused the bankruptcy process for the purpose of derailing or avoiding foreclosures.  There was evidence indicating Defendant had advised Gonzalez that she could file for bankruptcy to obtain relief from her debt.  A jury could infer that Defendant was aware of the distinction between forcing someone into bankruptcy for failing to pay their undisputed debts, on the one hand, and on the other hand filing a lawsuit to prove that a person committed a civil wrong and should be liable in damages.  Defendant obviously knew he could go to court and file a lawsuit against Wolf over the foreclosure because he had done precisely that in California.  Defendant was also obviously aware that his California lawsuit had failed and had been dismissed with prejudice.  Defendant nevertheless prepared the Involuntary Petition and mailed it to a bankruptcy court in Kansas, suggesting he was attempting to use the bankruptcy court to obtain money from Wolf in retaliation for the foreclosure.  Defendant did not live in Kansas at the time and had no residence here.  The evidence indicated he had only a tenuous connection to Kansas, having apparently purchased a distressed property in Kansas and obtaining a Kansas post office box, which he listed as his return address on the bankruptcy form.  A jury could infer that Defendant selected Kansas for the filing precisely because Wolf had no connection there, and with the hope that Wolf would not come to Kansas to defend against the Involuntary Petition, in which case Defendant might obtain an uncontested right to payment from Wolf based on the false representations in the Involuntary Petition.  A jury could also reasonably find such conduct was a product of fraudulent intent and was intended to deceive persons of ordinary prudence.  Moreover, even if such a scheme was not likely to succeed because of multiple defects in Defendant's claim, a jury might reasonably conclude that Defendant's false representations about Wolf's failure to pay his debts and indebtedness, if believed by a bankruptcy judge, would

have a natural tendency to influence the judge's decision on appointment of a trustee to marshal and sell Wolf's assets to pay the debts.[20]

Defendant's representations in the Involuntary Petition provide further support for a finding that Defendant acted with fraudulent intent. The first line of the petition explains it is a form to begin a bankruptcy case against an individual "you allege to be a debtor subject to an involuntary case." Defendant listed Wolf when asked to "Identify the Debtor," gave Wolf's law firm address as the "Debtor's" address, and checked a box identifying the "Type of debt" as "primarily business debts," which were defined as "debts that were incurred to obtain money for a business or investment or through the operation of the business or investment."[21] The form's obvious emphasis on "debts" makes it more likely Defendant realized that petitioning to force Wolf into bankruptcy was not simply an alternative way of suing him for wrongful foreclosure.

Defendant also checked a box on the Involuntary Petition next to an allegation that: "The debtor is generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount."[22] It is true that the significance of the "unless" clause is less than clear. The Government produced evidence that bankruptcy practitioners understand it to mean that a debtor cannot be forced into bankruptcy unless the debtor is generally failing to pay debts as to which there is no dispute.[23] Defendant testified he focused only on the

---

[20] Defendant's motion mentions materiality but does not articulate any reason why the misrepresentations in Count One could not be considered material. (Doc. 133 at 2.) The Court notes that a debtor's failure to generally pay his debts when due is a prerequisite to commencement of a case and appointment of a trustee. *See Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543–44 (10th Cir. 1988)

[21] *See* Govt. Exhibit 1.

[22] *Id.* at 3.

[23] *See* 11 U.S.C. § 303(b)(2) (allowing involuntary case to be filed by holders of "a claim against such person that it not contingent as to liability or the subject of a bona fide dispute as to liability or amount….") The Involuntary Petition included an allegation that "Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b)." Govt.

"unless" clause and thought it was true because Defendant had a good faith dispute with Wolf over wrongful foreclosure. His testimony, in effect, was that he believed the "unless" clause thus made the allegation true as to Wolf. But even assuming a plausible construction of the form was that the "unless" clause entirely superseded the allegation that the person was "generally" not paying their debts, the jury could find for reasons stated above that Defendant did not in fact have such a good faith belief when he adopted the representation and mailed in the petition. Moreover, as noted the form repeatedly referred to "debts" – which most people would associate with a fixed sum that a person is under a contractual or legal obligation to pay – not to unproven allegations that a person has committed a civil wrong, and certainly not to such allegations whose underlying premise has already been rejected by a federal court in a lawsuit over the supposed wrong.

Defendant's testimony effectively ignored the Involuntary Petition's allegations that Wolf was "generally" not paying his debts "as they become due." A jury could find Defendant understood that a failure to pay undisputed debts when they were due was a prerequisite for involuntary bankruptcy and that he knew this allegation was not true as to Wolf. Of course, if the jury believed that Defendant fraudulently created the 2012 Short Form Deed under which he claimed an interest in the Whittier Property, it could find he had no good faith belief whatsoever, and that he was certifying that Wolf was not paying his debts as part of a scheme to deceive a bankruptcy judge and obtain an order for Wolf to pay Defendant $630,000 to which he was not entitled. The jury could also find that Defendant's specific claim to $630,000 was a fraudulent pretense because it was based on a non-existent legal obligation that Defendant knowingly

---

Exhibit 1. Defendant testified he did not look up this statutory provision, although a jury would not have to credit that testimony, particularly in view of Defendant's other testimony indicating he did extensive legal research on his own.

fabricated – as opposed to merely misunderstood – when Defendant's asserted that Wolf was obligated to pay $2.1 million simply because Defendant had demanded that sum and Wolf failed to pay it within twenty days.

Section 13 of the Involuntary Petition asked for information about the petitioner's "claim," which taken in isolation could lend credence to Defendant's testimony that he thought he could bring a claim for wrongful foreclosure in the Involuntary Petition. But for reasons previously discussed the jury could find that Defendant's claim was made with fraudulent intent. A jury could rationally find that Defendant knew that Wolf owed him no debt, that Defendant knew he had no claim against Wolf within the meaning of the Involuntary Petition, and that Defendant falsely represented having a $630,000 claim in an attempt to deceive the bankruptcy court into ordering Wolf to pay that sum. The court notes that although Section 13 of the Involuntary Petition had space to describe the "Nature of petitioner's claim," Defendant left that section blank. A jury might reasonably infer that Defendant attempted to hide the nature of his claim because he knew it was not legitimate.[24] Moreover, the jury could find that Defendant's claim to the specific sum of $630,000 was knowingly created out of thin air. Finally, Defendant listed his $630,000 claim under a heading asking for the "Amount of the claim above the value of any lien."[25] Yet when Defendant was asked at trial what that heading meant, he said he did "not really" know, despite declaring by signing the form that the information provided in the petition "is true and correct."[26]

---

[24] *See Kalu*, 791 F.3d at 1205 ("Intent may be inferred from evidence that the defendant attempted to conceal activity.").

[25] Govt. Exhibit 1 at 3.

[26] *Id.* at 4.

A jury could infer from such evidence that Defendant was willing to include allegations that he did not know to be true in order to further his scheme to obtain money from Wolf.

In addition to arguing that he had no fraudulent intent, Defendant challenges whether his alleged false statements could rise to the level of a "scheme to defraud." A scheme to defraud "connotes a plan or pattern of conduct which is intended to or is reasonably calculated to deceive persons of ordinary prudence and comprehension."[27]  Defendant argues the Involuntary Petition "on its face was defective to anyone knowledgeable" about bankruptcy, such that no one was apt to be deceived by Defendant's representations.  But "[t]he focus of the language defining a scheme to defraud is on the violator, not the victim."[28]  The reference to "persons of ordinary prudence" helps a jury determine whether a defendant had the requisite *mens rea* – that is, "whether an accused action's were 'calculated to deceive.' "[29]  The Tenth Circuit has accordingly rejected the argument that a scheme to defraud "is only a violation if it would deceive a reasonably prudent person."[30]  The evidence here would allow a reasonably jury to find beyond a reasonable doubt that Defendant made his representations as part of a calculated attempt to deceive the bankruptcy court.

In sum, for all of the foregoing reasons, the court finds the Government produced sufficient evidence for a rational jury to find the challenged elements of mail fraud were proven beyond a reasonable doubt.

---

[27] *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994) (citation and internal quotations marks omitted).

[28] *United States v. Drake,* 932 F.2d 861, 864 (10th Cir. 1991).

[29] *Id.* (citation omitted).

[30] *Id.*

**B. Count Two – False Statement 18 U.S.C. § 152(3).**

Defendant next argues the Government failed to introduce evidence to support the third, fourth, fifth, and sixth essential elements of the offense of making false statements under oath in a bankruptcy proceeding in violation of 18 U.S.C. § 152(3), as charged in Count Two. The court individually addresses these arguments below.

The third essential element required the Government to prove that the declaration or statement made by Defendant was false. Defendant focuses on the allegation in the Involuntary Petition that Wolf was "generally not paying such debtor's debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount." Defendant again asserts he did not rely on the first clause of the sentence, and contends he thought the allegation was true because he had a good faith dispute with Wolf over the foreclosure. But whether Defendant misinterpreted the form, as he contends, or whether he knowingly misrepresented that Wolf was generally not paying his debts was a question of fact for the jury. If the jury believed Gonzalez's testimony and rejected Defendant's testimony as not credible, as it had a right to do, it could reasonably conclude Defendant knew his representations on the form were false.

Defendant next challenges the fourth essential element, which required a showing that the declaration concerned a material fact. The jury was instructed that a fact is material for purposes of this offense "if it is capable of influencing the decision of a trustee or the court in the bankruptcy proceeding." Deciding whether a statement is material is a question for the jury that requires

examination of the decision to be made by the person at whom the statement was directed.[31] The only argument in Defendant's brief under the heading of materiality reasserts that Defendant relied on the "unless" clause and did not intend to make a declaration that Wolf was generally not paying his debts.[32] The court rejects that argument because the evidence previously discussed was sufficient to allow a rational jury to infer that Defendant knew he did not have a bona fide claim against Wolf and that he knowingly misrepresented that Wolf was not paying his debts.

Defendant next challenges the evidence pertaining to the fifth essential element, which required proof that Defendant knew the declaration or statement he made was false. Defendant points out that he had no formal legal training and argues there was no direct or circumstantial evidence that he believed he was making a false declaration when he adopted the allegation that Wolf was generally not paying his debts. Clearly, if the jury had believed Defendant's testimony, it would have had a basis on which to find that Defendant simply misunderstood the Involuntary Petition and the law. But a rational jury viewing the evidence in the light most favorable to the Government could conclude that Defendant knowingly made a false declaration by representing that Wolf was generally not paying his debts.

---

[31] *See United States v. Gaudin*, 515 U.S. 506, 512 (1995). *See also United States v. Sharp*, 749 F.3d 1267, 1280 (10th Cir. 2014) ("The question of whether a statement is material is a question of fact for the jury to decide.") (citation omitted).

[32] The Court notes there was evidence that the Involuntary Petition was defective in several respects, such that if the defects were challenged, the petition would not likely have succeeded in getting a bankruptcy judge to appoint a trustee. For example, the commencement of an involuntary case requires at least three creditors, and the petition filed by Defendant listed only two. *See* 11 U.S.C. § 303(b)(1). But other evidence indicated that without a challenge, an unopposed petition might have resulted in appointment of a trustee. *See* 11 U.S.C. § 303(h) ("If the petition is not timely controverted, the court shall order relief against the debtor ….") *See also In re Mason*, 12 B.R. 316, 317 (Bankr. D. Nev. 1981), *aff'd*, 20 B.R. 650 (B.A.P. 9th Cir. 1982), *aff'd*, 709 F.2d 1313 (9th Cir. 1983) ("A petition for involuntary bankruptcy which is not controverted as to the proper number of petitioning creditors results in a valid Order for Relief.").

Defendant lastly challenges the sixth essential element of Count Two, which required the Government to prove that Defendant made the declaration or statement fraudulently. For the reasons previously discussed, the circumstantial evidence was sufficient to permit the jury to find Defendant made the declaration about Wolf not paying his debts with fraudulent intent.

**C. Motion for New Trial**

Defendant argues that all of the foregoing matters warrant a new trial. The court finds no basis for granting a new trial, however, as none of the grounds asserted by Defendant show error or prejudice in the course of the trial. Defendant received a fair trial in which he was ably represented by competent counsel. Defendant was able to challenge the Government's witnesses and evidence and to fully explain his version of events to the jury. The jury simply did not believe Defendant's version, and it had a sufficient legal basis for rejecting Defendant's arguments and for finding the essential elements of the offenses charged beyond a reasonable doubt.

Defendant's final argument is that a new trial is warranted because the Court excluded the testimony of Lawrence Asuncion, who was proffered by the defense as an expert on securitization of mortgages. Defendant argues this testimony would have verified Defendant's beliefs about a broken chain of title on the Whittier Property. The court finds no error in the exclusion of Mr. Asuncion's testimony, however, and no basis for granting a new trial on account of the exclusion of such evidence. It is apparent that Mr. Asuncion's proposed testimony suffered from a number of defects and was properly excluded. Defendant has failed to show that this witness had sufficient expertise to testify about the Whittier Property chain of title or the legal issues surrounding it, or that admission of such testimony met the requirements of Rule 702 of the Federal Rules of Evidence.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment of Acquittal or for New Trial (Doc. 133) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 12th day of May, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE